UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                         :

MFW ASSOCIATES, LLC,                :              15 Civ. 2513 (PAE)
                      Plaintiffs,    :
                                     :             <u>OPINION & ORDER</u>
                  -v-                    :

STEVEN PLAUSTEINER and SUSAN PLAUSTEINER, :

                        Defendants.   :

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/16

**PAUL A. ENGELMAYER, District Judge:**

        This case involves claims arising out of the failure of borrowers to repay loans made to

develop a now-closed ski resort in Vermont. The defendants, Steven Plausteiner and Susan

Plausteiner ("defendants" or "the Plausteiners"), have moved to dismiss the Complaint brought

by the plaintiff, MFW Associates, LLC ("MFW"), which claims that the Plausteiners owe unpaid

money under the operative loan agreement. The Plausteiners seek dismissal primarily on the

ground of claim preclusion (*res judicata*). They argue that prior litigation in Vermont relating to

the loans precludes MFW from recovering in this lawsuit. Separately, the Plausteiners argue for

dismissal on the grounds that the operative agreement—an "Amended Forbearance Agreement"

("AFA") reached after the borrowers' initial failure to repay the loans—released them from

personal liability on the outstanding debt. For the reasons that follow, the Court denies the

motion to dismiss in its entirety.

## I.      Background

### A.  Factual Background[1]

#### 1.   The $4.5 Million Loan and Snowdance's Default

MFW is a limited liability company managed by Dan Purjes.  Compl. ¶¶ 1, 13.  MFW is a creditor of Snowdance, LLC ("Snowdance"), a limited liability company which owned the Ascutney Mountain Resort ("Resort"), a ski resort located in Vermont.  *Id.* ¶¶ 6–7, 14.  The Plausteiners were the majority owners and sole officers of Snowdance at all relevant times, *id.* ¶ 7[2]; they were also the sole owners of various other corporate entities involved in the Resort's development and management, *id.* ¶ 8.  These included Snowdance Realty Company ("Realty"), Snowdance Ski Company ("Ski"), and Snowdance Hotel Company ("Hotel").  *Id.* ¶ 8.

---

[1] The facts are drawn primarily from the Complaint, Dkt. 1 ("Complaint" or "Compl.").  For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012).  The Court also considered the Amended Forbearance Agreement, attached as Exhibit 1 to defendants' memorandum of law in support of their motion to dismiss, Dkt. 20, Ex. 1 ("AFA").  Consideration of the AFA is proper because, as the operative contract underlying plaintiff's claims, it is incorporated by reference in, and integral to, the Complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002).  "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment."  *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006) (alterations in original) (internal quotation marks omitted) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)), *aff'd*, 552 U.S. 389 (2008).  The Court did not consider, however, the "Discharge Separate From Mortgage," attached as Exhibit 2 to defendants' memorandum of law in support of their motion to dismiss. Dkt. 20, Ex. 2, at 1.  Although defendants contend that this document relates to certain provisions of the AFA, it is neither referenced in, nor incorporated by, MFW's Complaint, and therefore may not be considered at this stage.

[2] MFW represents in its briefs that, in July 2010, the Plausteiners surrendered their membership interests in Snowdance.  That factual claim is neither relevant nor cognizable on this motion.

On May 19, 2005, Snowdance obtained a $4.5 million loan from the Palisades Regional Investment Fund ("PRIF") (the "PRIF Loan") pursuant to a promissory note dated May 19, 2015 (the "Note").  *Id.* ¶ 9.[3]  The PRIF Loan was secured by the buildings, improvements, and fixtures upon the Resort.  *Id.*  The Plausteiners personally guaranteed the loan.  *Id.*

Around December 2007, Snowdance defaulted on the PRIF Loan and PRIF initiated foreclosure proceedings.  *Id.* ¶ 10.  PRIF and Snowdance then entered into an agreement that PRIF would refrain from enforcing its rights and remedies under the PRIF Loan subject to certain conditions ("Forbearance Agreement").  *Id.* ¶ 11.

Around February 2008, however, Snowdance defaulted on the Forbearance Agreement and PRIF resumed the foreclosure proceedings in Vermont state court ("the Vermont Action").  *Id.* ¶¶ 12, 20.

### 2.    The Assignment to MFW and the AFA

Around October 2008, MFW purchased, and was assigned, the PRIF Loan.  *Id.* ¶ 14.  MFW then entered into the AFA, titled "Amendment No. 1 to the Forbearance Agreement dated June 30, 2008"—a key document here.  *Id.* ¶¶ 15–16.[4]  The agreement extended the period of forbearance until October 1, 2009.  *Id.* ¶ 16.

The AFA states that it was entered into "by and between":

> MFW ASSOCIATES, LLC, . . . (the "Lender"), who is the successor and assignee of PRIF ASCUTNEY, LLC ("PRIF"), and SNOWDANCE LLC, . . . (the "Borrower"), STEVEN PLAUSTEINER . . . , SUSAN PLAUSTEINER . . . (each sometimes referred to herein as a "Guarantor" individually, jointly and severally as the "Guarantors"), SNOWDANCE SKI COMPANY, . . . SNOWDANCE HOTEL COMPANY, . . . SNOWDANCE

---

[3] Although the Complaint refers to PRIF, the AFA and other documents indicate that the entity's full name is PRIF Ascutney, LLC.  *See, e.g.*, AFA at 1.

[4] The AFA recites that Snowdance defaulted on the December 2007 forbearance agreement, and that MFW agreed to a second forbearance agreement dated June 30, 2008.  AFA ¶ 2.

> REALTY COMPANY, . . . STEVEN PLAUSTEINER and SUSAN
> PLAUSTEINER, (collectively, the "Pledgors", and together with
> the Borrower and the Guarantors, are referred to herein as the
> "Debtor").

AFA at 1.  The AFA provides that it "shall be deemed incorporated into and made part of the

Transaction Documents." *Id.* § 10.  These, in turn, are defined to encompass the PRIF Loan and

the associated promissory note, the agreement for the sale of the PRIF Loan to MFW and the

associated assignment, and "all instruments, documents, mortgages, forbearance agreements and

other agreements executed in connection therewith or related thereto, and amendments

modifications, or supplements thereto." *Id.* ¶ 1.

At the time MFW purchased the PRIF Loan, it had an unpaid principal balance of $1.35

million.  Compl. ¶ 14.  Section 5(a) of the AFA provides that, to satisfy the obligations under the

PRIF Loan, "Debtor shall pay" to MFW, by October 1, 2009, the reduced amount of

$850,000.00, plus 20% interest calculated from the date of the agreement and the date of

payment, plus reasonable fees, costs, and expenses incurred by MFW as a result of enforcement

of the Transaction Documents between the date of the agreement and date of payment.  AFA §

5(a); Compl. ¶ 17.  But, if the Debtor did not pay that reduced amount by October 1, 2009, § 5(b)

provides that MFW's agreement to accept the reduced balance would become void, and "Debtor

shall pay to [MFW] the entire outstanding Debt, . . . which shall become due and payable

immediately," which includes "all accrued and unpaid interest thereon to date, plus all fees,

costs, and expenses."  AFA § 5(b); Compl. ¶ 18.  Section 5(b) provides that "Debtor also

acknowledges that it is obligated to pay any additional legal fees incurred by [MFW] through the

collection of the entire indebtedness owed by Debtor pursuant to the terms of the Transaction

Documents."  AFA § 5(b).

4

In addition to the costs and fees described in § 5, § 4 imposes additional obligations on the Debtor regarding costs and fees. It provides: "The Debtor . . . jointly and severally agrees to pay on demand all costs and expenses, if any (including . . . reasonable attorneys' fees and expenses), in connection with the enforcement . . . of this Amendment." *Id.* § 4.

Finally, two provisions in § 8 are relevant here. Section 8(a) provides that the Debtor "shall executed [sic] and deliver to [MFW] Limited Liability Membership Pledge Agreements from Steven Plausteiner, Susan Plausteiner, [Ski], [Hotel], and [Realty] pledging all of the limited liability common membership interests owned by each person or entity in Snowdance." *Id.* § 8(a). And § 8(e) provides that:

> [MFW] hereby releases Guarantors, Steven and Susan Plausteiner, from their obligations under the Transaction Documents and from any guaranty relating in any way to the Transaction Documents, including but not limited to, (i) the Guaranty dated May 19, 2005 given by the Guarantors in favor of PRIF and (ii) the Limited Guaranty dated May 19, 2005 given by the Guarantors in favor of PRIF (together the "Guarantees"). The Guarantees are hereby terminated and of no further force or effect. . . . This release shall only apply to Guarantors.

*Id.* § 8(e).

### 3. Prior Judicial Proceedings in Vermont[5]

As the Complaint reflects, there have been legal proceedings in Vermont "relating to the underlying PRIF Loan, with MFW foreclosing on the physical collateral that secured the PRIF

---

[5] This section of the facts draws upon the publicly available docket and filings in the Vermont Action, including legal submissions there by the parties, copies of the underlying transaction documents attached to those submissions, and the Vermont court's orders and judgments. It is appropriate to consider these materials in resolving defendants' motion to dismiss based on *res judicata*, as courts resolving such claims "routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Giannone v. York Tape & Label, Inc.*, No. 06 Civ. 6575 (JFB), 2007 WL 1521500, at *1 (E.D.N.Y. May 23, 2007) (internal quotation mark omitted) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)), *aff'd*, 548 F.3d 191 (2d Cir. 2008) (per curiam).

Loan." Compl. ¶ 20. The Vermont Action (Docket No. 175-3-08 Wrcv) was brought in

Vermont Superior Court, Windsor County Civil Division. The following is an overview of that

action. The Court provides a more detailed account in its discussion, *infra*, of defendant's

argument for dismissal based on *res judicata*.

On March 11, 2008, PRIF commenced the Vermont Action by filing a Complaint of

Foreclosure seeking to foreclose on the mortgage that secured the PRIF Loan as a result of

Snowdance's default on the loan. Complaint of Foreclosure ¶¶ 5–15; Vt. Dkt. Entry 3/11/08.

The foreclosure proceedings were stayed on account of the forbearance agreements described

above; however, they resumed on November 3, 2009. *See* Vt. Dkt. Entries 3/23/09 and 11/03/09;

Compl. ¶¶ 12, 15–16; *see* AFA.

---

Specifically, the Court considered: the Docket, No. 175-3-08 Wrcv, Vermont Superior
Court, Windsor Civil Division, Dkt. 45–2 through 45–5 ("Vt. Dkt."); the Complaint of
Foreclosure dated February 28, 2008; Dkt. 51–1 ("Complaint of Foreclosure"); the Amended
Complaints of Foreclosure dated January 29, 2010, June 29, 2010, and June 6, 2011, Dkt. 51–8
through 51–10 (collectively, the "Amended Complaints of Foreclosure"); the Supplemental
Complaint, Dkt. 51–4, at 1–7 ("Supplemental Complaint" or "Supp. Compl."); Plaintiff's
Memorandum of Law in Support of Summary Judgment With Respect to Pledged Membership
Interests, Dkt. 28–1 ("MFW SJ Br."); the Decision Re: Cross-Motions for Summary Judgment,
Dkt. 24, Ex. C ("Vt. SJ Decision"); the Joint Stipulation Regarding Motion to Sell Lift and
Motion for Preliminary Injunction, Dkt. 24, Ex. D ("Joint Stipulation"); the Entry Regarding
Motion dated March 21, 2011 for the Motion to Allow Sale of Ski Lift, No. 23, Dkt. 46–3 ("Joint
Stipulation Order"); MFW's Opposition to Snowdance Realty Company's Motion for Partial
Distribution, Dkt. 46–4 ("MFW Partial Distribution Opposition"); the Decision on Pending
Motions, Dkt. 46–6 ("Pending Motions Decision"); the Judgment Order and Decree of
Foreclosure by Judicial Sale, Dkt. 41–1 ("Foreclosure Judgment Order"); the Decision on Cross-
Motions for Summary Judgment with Respect to Chairlift Sale Proceeds, Dkt. 46–9 ("Vt.
Chairlift Decision"); MFW's Motion for Order of Confirmation of Sale, Dkt. 46–1 ("MFW
Confirmation Motion"); Order of Confirmation of Sale, Dkt. 46–2 ("Confirmation Order"); the
Promissory Note dated May 19, 2005, Dkt. 51–4, at 9–23 (the "Note"); the Mortgage,
Assignment of Leases and Rents and Security Agreement dated May 20, 2005 (the "Mortgage"),
Dkt. 51–4, at 25–76 and 51–5, at 1–14; the Forbearance Agreement dated June 30, 2008, Dkt.
51–5, at 16–25; the Pledge Agreements entered into by Ski, Susan Plausteiner, Steven
Plausteiner, Realty, and Hotel, Dkt. 51–7, at 39–75 (collectively, the "Pledge Agreements").
Some of these documents were filed as attachments multiple times in this matter; for simplicity,
the Court references one of each filing.

After the foreclosure proceedings resumed, on January 27, 2010, MFW filed a

Supplemental Complaint against Snowdance, Realty, Ski, Hotel, and the Plausteiners.  Supp.

Compl.; Vt. Dkt. Entry 1/27/10.  The Supplemental Complaint sought to foreclose on the

ownership interests in Snowdance that had been pledged as collateral for the AFA.  *See id.* ¶ 1.

After the Vermont court, on November 24, 2010, denied summary judgment on the

Supplemental Complaint, Vt. SJ Decision at 4, on February 15, 2011, MFW entered into a Joint

Stipulation with the Plausteiners, Realty, Hotel, and Ski, which provided that the Plausteiners

and Realty would consent to the sale of a chairlift, and that the Supplemental Complaint would

be "dismissed with prejudice," Joint Stipulation ¶¶ 1, 3.

On August 14, 2013, following various motions and rulings pertaining to the foreclosure

proceedings, the Vermont court entered a Judgment Order and Decree of Foreclosure by Judicial

Sale ("Foreclosure Judgment Order").  It specified the amount of the judgment and the deadline

by which the named defendants could redeem the foreclosed property.  Foreclosure Judgment

Order at 2–5.  On November 19, 2013, the Vermont court issued an Order of Confirmation of

Sale, confirming the sale of the subject property, foreclosing on defendants' interests in the

property, and indicating that "Plaintiff waives any deficiency claim."  Confirmation Order at 1–

2. The Vermont Action was closed on May 1, 2014.  Vt. Dkt. Entry 5/1/14.

### B.  Procedural History

On April 2, 2015, MFW filed its Complaint in this action against Steven Plausteiner and

Susan Plausteiner.  Dkt. 1.  The Complaint brings one count for breach of contract under the

AFA and seeks damages not less than $4,002,606.61.  Compl. ¶¶ 24–28.  On May 15, 2015, the

Plausteiners answered.  Dkts. 6, 8.  As affirmative defenses, they asserted, *inter alia*, that MFW

"failed to state a claim upon which relief can be granted" and that MFW's claims and cause of action "is barred by the doctrines of collateral estoppel and res judicata."  *E.g.*, Dkt. 6, ¶¶ 29, 33.

On June 3, 2015, the Plausteiners filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Dkt. 19 ("Motion"),[6] and an accompanying memorandum of law in support, Dkt. 20 ("Def. Br."), with exhibits attached.  On June 18, 2015, MFW filed a memorandum of law in opposition, Dkt. 23 ("Pl. Br.").  On June 26, 2015, the Plausteiners filed a reply, Dkt. 24 ("Def. Reply Br."), with additional exhibits attached.

On July 1, 2015, MFW submitted a letter seeking leave to file a sur-reply to address the issue of *res judicata* that was raised for the first time in the defendants' reply, which the Court granted on July 2, 2015.  Dkts. 25, 26.  On July 9, 2015, MFW filed a sur-reply in opposition to the motion to dismiss.  Dkt. 27 ("Pl. Sur-reply Br.").  On July 14, 2015, the Plausteiners, *sua sponte*, submitted a letter to the Court, with additional attachments, Dkt. 28 ("Def. 7/14/15 Ltr."), in further support of their *res judicata* arguments and responding to arguments in MFW's sur-reply.  On July 23, 2015, MFW filed a letter in response, Dkt. 30 ("Pl. 7/23/15 Ltr."), asking the Court either not to consider the defendants' July 14 Letter or to permit plaintiff to submit a response, which was included in its letter.  On August 10, 2015 the Court advised the parties that

---

[6] A motion under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Here, the Plausteiners answered the Complaint prior to making the instant motion; therefore the proper vehicle would have been a motion under Rule 12(c) for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(h)(2)(B); *In re Livent Sec. Litig.*, 193 F. Supp. 2d 750, 753 (S.D.N.Y. 2002).  Because the instant motion could have been brought under FRCP 12(c), and because under that circumstance "the court simply treats the motion as if it were a motion to dismiss," *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 909 n.2 (2d Cir. 1988), the Court construes defendants' motion as one made under FRCP 12(c), *see id.* (acknowledging that "technically the motion should have been styled" differently, but noting "however" that the two motions are effectively the same and proceeding to the next stage of analysis); *see also Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 53 (2d Cir. 1985) (treating a motion as one under 12(c) where the motion did not specify under which rule it was brought).

it would consider both defendants' July 14 letter and plaintiff's July 23 letter in ruling on the motion to dismiss.  Dkt. 31.

On August 18, 2015, the Court issued an order directing MFW to file a supplement to the Complaint, providing additional information regarding the citizenship, for diversity purposes, of the members of MFW Associates, LLC.  Dkt. 32.  On August 24, 2015, in response, MFW filed a supplemental statement concerning jurisdiction.  Dkt. 33.

On September 11, 2015, the Court issued an Order directing defendants to submit the "Decree of Foreclosure by Judicial Sale" from the Vermont Action, which had been referenced in defendants' submissions regarding *res judicata*, Dkt. 38, which defendants did on September 15, 2015, Dkt. 41 (attaching the Foreclosure Judgment Order).

On September 18, 2015, the Court heard argument.  After argument, the Court invited the parties to submit additional public record documents from the Vermont Action, along with letter memoranda, relevant to the *res judicata* issue.  Dkt. 44.  On October 2, 2015, both plaintiff and defendants submitted letters with exhibits attached.  Dkts. 45 ("Pl. 10/2/15 Ltr."), 46 ("Def. 10/2/15 Ltr.").  On October 5, 2015, plaintiff *sua sponte* filed a letter responding to defendants' October 2 letter, Dkt. 47, and on October 7, 2015, defendants *sua sponte* filed a letter responding to plaintiff's October 5 letter, Dkt. 48.[7]

On February 24, 2016, the Court issued an order directing the parties to submit additional public record documents from the Vermont Action, specifically, the original Complaint in the Vermont Action and, if there was one, the Amended Complaint operative at the time the

---

[7] Although neither plaintiff nor defendants sought leave to file these additional submissions, the Court has considered them.

Vermont Superior Court issued the Foreclosure Judgment Order.  Dkt. 50.  On February 29,

2016, the parties submitted the records the Court requested.  Dkt. 51.

## II.       Discussion

Defendants move to dismiss on two grounds.  First, they argue, MFW's claims are barred

by *res judicata* as a result of the Vermont Action.  Second, they argue, the Complaint fails to

state a claim upon which relief can be granted, because the AFA released defendants of their

personal obligations under the loan and related agreements.  The Court addresses these

arguments in turn.

### A.       Res Judicata

In moving for dismissal based on *res judicata*, the Plausteiners argue that the Vermont

Action bars MFW's present claims because (1) it resulted in a final adjudication on the merits, in

that the Vermont court dismissed the Supplemental Complaint with prejudice and issued the

Foreclosure Judgment Order and Confirmation Order; and (2) MFW's present claim (that the

Plausteiners are personally liable on the debt) arises from the same facts and transactions at issue

in the Vermont Action.  The Plausteiners therefore argue that MFW's claims could have been

raised in the Vermont Action and cannot be raised here.  They further argue that the issue of

whether they were personally liable on the debt *was in fact* presented by the Supplemental

Complaint in the Vermont Action, and that MFW forewent its right to pursue such claims when

it dismissed that complaint with prejudice and completed the foreclosure sale while waiving any

deficiency claims.  The Plausteiners argue that *res judicata* also bars MFW's present claims for

attorneys' fees and the costs of enforcing the loan agreements in the Vermont Action.

In response, MFW principally argues that the Vermont Action does not preclude its

present claims because that was a foreclosure action, and under Vermont law, such an action

does not preclude a subsequent action on the underlying debt—either a deficiency claim or its

equivalent, a claim for breach of contract.  As to the Supplemental Complaint, MFW argues that
it never litigated the Plausteiners' personal liability on the debt, and that the Joint Stipulation's
dismissal of the Supplemental Complaint did not preclude such claims.  In any event, MFW
argues, the Joint Stipulation was later voided by breaching actions by the Plausteiners.  And as to
the Foreclosure Judgment Order and Confirmation Order, MFW argues that the foreclosure was
against property held by Snowdance, not the Plausteiners, and therefore the waiver of deficiency
claims in the Confirmation Order barred only claims against Snowdance.  Finally, MFW argues,
even if claims to recover the debt were barred, its claims for attorneys' fees and costs incurred in
enforcing its agreements in the Vermont Action would not be.

> To assess these competing claims, the Court first recaps in detail the Vermont Action,
and then considers the parties' claims in light of principles of claim preclusion.

### 1.      The Vermont Action In Depth

> On March 11, 2008, PRIF filed the Complaint of Foreclosure against Snowdance,
seeking to foreclose on the recorded Mortgage, which secured the PRIF Loan and underlying
promissory note.  Complaint of Foreclosure at 4–5; Vt. Dkt. Entry 3/11/08.  The bases for that
Complaint of Forfeiture were Snowdance's defaults on the promissory note and the Forbearance
Agreement.  *See id.* ¶¶ 5–15.[8]  The Mortgage was between Snowdance as mortgagor and PRIF as
mortgagee.  Mortgage at 1.

---

[8] A second defendant, Textron Financial Corporation ("Textron") was also named, because
Textron also had a mortgage from Snowdance and therefore may have had an interest in the
encumbered property.  Complaint of Foreclosure ¶¶ 16–18.  The Complaint of Foreclosure was
later amended to substitute MFW as successor in interest to PRIF and the named plaintiff, and to
add defendants Glenn B. Seward, Shelley M. Seward, Dan Purjes, and Myles Wittenstein, who
had also been granted mortgages on the encumbered property.  *See* Amended Complaints of
Foreclosure.  The two Seward defendants were later dismissed from the case.  Vt. Dkt. Entry
5/10/10.  The Amended Complaints of Foreclosure do not alter the substance of the foreclosure
action as relevant here.  Therefore, the Court will refer herein to the Complaint of Foreclosure
unless otherwise specified.

On May 20, 2008, judgment for PRIF was entered on the Complaint of Foreclosure.  Vt. Dkt. Entry 5/20/08; Foreclosure Judgement Order at 1.

As noted above, the foreclosure proceedings were then stayed pursuant to several forbearance agreements.  They resumed after Snowdance defaulted on those agreements.

In addition to resuming the foreclosure proceedings on the Complaint of Foreclosure, on January 27, 2010, MFW filed a Supplemental Complaint against Snowdance, Realty, Ski, Hotel, and the Plausteiners.  Supp. Compl. at 1, 7.[9]  It described the action it brought as one "to foreclose on membership interests in Snowdance LLC held by [Realty, Ski, Hotel, and the Plausteiners] (collectively the 'Guarantors')."  *Id.* ¶ 1.[10]  The Supplemental Complaint alleged that the Guarantors had executed Pledge Agreements "[i]n connection with" the AFA, "guarantee[ing] the underlying debt of Snowdance" and granting MFW a "security interest" in each pledgor's equity and membership interests in Snowdance.  *Id.* ¶ 19 (internal quotation mark omitted).  MFW sought to foreclose on the pledged interests because Snowdance was in default on the AFA, and the Guarantors were therefore also in default on their Pledge Agreements.  *Id.* ¶¶ 21–22.

MFW's Supplemental Complaint had three counts.  Count 1 was for breach of the Forbearance Agreement, AFA, and Pledge Agreements.  *Id.* ¶¶ 23–26.  Count 2 was for foreclosure and judicial sale of the collateral pledged under the Pledge Agreements.  *Id.* ¶¶ 27–30.  And Count 3 was for a deficiency judgment, *id.* ¶¶ 31–32; it stated:  "If the sale of the LLC

_____

[9] On March 23, 2010, the motion to file the Supplemental Complaint was granted.  Vt. Dkt. Entries 1/27/10, 3/23/10.

[10] The Supplemental Complaint also listed as defendants Richard Frary, Joel Mael, and Textron.  Supp. Compl. at 1.  The Supplemental Complaint indicated that Frary and Mael had minority interests in Snowdance of 2.56% and 1.67% respectively.  *Id.* ¶ 3.

interests in Snowdance is less than the amount of the debt secured by the guarantees then Plaintiff [MFW] will be entitled to a deficiency judgment against the Guarantors." *Id.* ¶ 32.  As relief, the Supplemental Complaint sought: a declaratory judgment that defendants were in default under the AFA; attorneys' fees; compensatory damages; authorization for the sale of the equity interests in Snowdance and approval of the sale procedures as commercially reasonable; foreclosure on defendants' equity interests; a judgment for all sums due and to become due, together with litigation costs, including attorneys' fees; and a deficiency judgment. *Id.* ¶¶ A–H.

On May 27, 2010, MFW moved for summary judgment; on June 18, 2010, defendants Ski, Hotel, Realty, and the Plausteiners cross-moved for partial summary judgment. *See* Vt. SJ Decision, at 4.  In its brief, MFW stated that it sought "a declaration that Debtors are liable for any deficiency" that might remain after a judicial sale of the pledged collateral, and argued that under the language of § 5(b) of the AFA, Debtors are liable for the entire outstanding debt if they default on its terms.  MFW SJ Br. 2, 7.  In two footnotes, MFW stated that it was *not* pursuing a deficiency judgment against the Plausteiners "personally at this time."  *Id.* at 2 n.1, 7 n.6.

On November 24, 2010, Judge William D. Cohen issued a decision denying the cross-motions for summary judgment.  Vt. SJ Decision at 4.  The decision noted, preliminarily, that "the parties have already agreed that plaintiff is entitled to a commercially reasonable sale of the collateral: the membership interests in Snowdance LLC that were owned by defendants Steven Plausteiner, Susan Plausteiner, [Realty, Ski, and Hotel]."  *Id.* at 1.  The decision, therefore, addressed only the question "whether the collateral pledge agreements were non-recourse, or whether plaintiff is instead entitled to seek a deficiency judgment."  *Id.*  Consistent with the footnotes in MFW's brief, the decision addressed only whether a deficiency judgment could be obtained from Realty, Ski, and Hotel.  *Id.*; *see also id.* at 2 (addressing "whether the contract

documents unambiguously establish whether the three Snowdance companies are jointly and severally liable for the entire amount of the loan").  As to that issue, Judge Cohen analyzed the interplay between the AFA's payment terms and the Pledge Agreements' remedy provisions.  He held it ambiguous whether the guarantors' obligations extended to the entire loan or solely the collateral pledged.  *See id.* at 2–4.  In a footnote, Judge Cohen observed that the analysis was complicated, not clarified, by the AFA provision releasing the Plausteiners from their earlier personal guarantees:

> On the one hand, as plaintiff argues, the releases do show that the parties knew how to draft specific releases from liability and could have expressly limited the liability of the Snowdance companies if that was their intent.  On the other hand, it does not make sense to release the personal guarantees if [MFW's] interpretation of the contract—that each pledger is jointly and severally liable for the entire amount of the loan—is correct.  The release of the guaranty would be an empty gesture under that interpretation, for the Plausteiners would still remain severally liable for the entire amount of the loan in their individual capacities.

*Id.* at 3 n.1.

On February 15, 2011, MFW entered into a Joint Stipulation with the Plausteiners, Realty, Hotel, and Ski.  Joint Stipulation at 2, 5.  It provided that the Plausteiners and Realty would withdraw their objection to Snowdance's motion to allow the sale of the ski lift and consent to the sale, subject to the conditions stated in the Joint Stipulation.  *Id.* ¶ 1.  In addition, the Joint Stipulation provided:  "The Supplemental Complaint filed in this action shall be dismissed with prejudice."  *Id.* ¶ 3.  On March 21, 2011, the Vermont Superior Court granted Snowdance's motion to allow the sale of the ski lift pursuant to the parties' agreement in the stipulation.  Joint Stipulation Order.

After the Joint Stipulation was entered, the foreclosure proceedings continued.  On July 16, 2013, Judge Cohen held a hearing "regarding amounts due and priority of liens and security

interests," at which MFW and Snowdance "stipulated to the amounts due."  Foreclosure

Judgment Order at 1.  Judge Cohen approved the amounts and issued an order entering

judgment.  *Id.*

On August 14, 2013, Judge Cohen issued the Foreclosure Judgment Order.  *Id.*  It

provided for a judgment that Snowdance owed a total of $5,224,187.61, comprised of, *inter alia*,

$1,320,903.76 in principal and $2,975,762.40 in interest, as well as $102,435.05 in legal fees.

*Id.* at 2.  The Foreclosure Judgment Order further provided for an approximately 30-day

redemption period for Snowdance, Realty (as successor to Textron), Ski, Hotel, the Plausteiners,

Purjes, Wittenstein, Frary, and Mael to pay the full amount of the judgment.  *Id.* at 2–5.  The

Foreclosure Judgment Order also instructed that "[a]ny motion for a deficiency judgment based

on a claim in the Complaint shall be filed at the same time as the motion for confirmation."  *Id.*

at 8.

On November 6, 2013, MFW filed a Motion for Order of Confirmation of Sale.  Vt. Dkt.

Entry 11/06/13; MFW Confirmation Motion.  The motion stated that a "public sale of the lands

and premises subject to this foreclosure action" had taken place two days earlier, on November

4, 2013, and that the highest bidder was MFW, which bought the foreclosed property for $1.5

million.  MFW Confirmation Motion at 1–2.  The motion stated that MFW "dismisses its claims

for judgment for deficiency."  *Id.* at 2.

On November 19, 2013, Judge Cohen issued an Order of Confirmation of Sale.  It

opened:  "This foreclosure action was filed by Complaint dated March 11, 2008, by MFW

ASSOCIATES, LLC's predecessor interest to [sic] PRIF ASCUTNEY, LLC, against above

named defendants," which the caption listed as Snowdance, Realty (successor in interest to

Textron), Purjes, Wittenstein, Hotel, Ski, the Plausteiners, Frary, and Mael.  Confirmation Order

15

at 1.  After specifying the lands, premises, fixtures, and equipment foreclosed on, the

Confirmation Order stated that the interests of the named defendants in the subject lands and

premises had been foreclosed upon, and that the foreclosed property had been sold for $1.5

million against the total amount due MFW of $5,296,648.50, leaving no surplus for distribution.

*Id.* at 1–2.  The Confirmation Order then specified, "Plaintiff waives any deficiency claim," with

Judge Cohen adding a handwritten note, "—However, this waiver excludes the Plaintiff's award

as a priority lien holder of funds currently being held in escrow from the sale of chairlift.  See

Nov. 1 2013 Order. [Initialed] WDC."  *Id.* at 2.  The order then confirmed the sale.  *Id.* at 3.

### 2.    Legal Standards Governing *Res Judicata*

"*Res judicata* challenges may properly be raised via a motion to dismiss."  *Thompson v.*

*Cty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994)); *see also Yeiser v. GMAC Mortgage Corp.*,

535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008).  "Under the doctrine of res judicata, or claim

preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from

relitigating issues that were or could have been raised in that action.'"  *Flaherty v. Lang*, 199

F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998))

(emphasis omitted); *see also Federated Dep't Stores, Inc., v. Moitie*, 452 U.S. 394, 398 (1981).

*Res judicata* (claim preclusion) is distinct from the related doctrine of collateral estoppel (issue

prelusion), which "refers to the preclusive effect of a judgment that prevents a party from

litigating, for a second time, an issue of fact or law that has once been decided."  *Yeiser*, 535 F.

Supp. 2d at 421.  Defendants argue that the Vermont Action bars MFW's claims here under *res*

*judicata*, not collateral estoppel.  Def. Reply Br. 8–10.

State court judgments on the merits have preclusive effect in federal courts.  *Gianatasio*

*v. D'Agostino*, 862 F. Supp. 2d 343, 348 (S.D.N.Y. 2012) (citing the Full Faith and Credit Clause

of the United States Constitution, Art. IV, § 1, and the full faith and credit statute, 28 U.S.C.

§ 1783). A federal court's determination of the *res judicata* effect of the state court judgment is governed by "the preclusion law of the State in which the judgment was rendered." *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (discussing the full faith and credit statute); *see also Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 192–93 (2d Cir. 2008) ("When determining the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state." (internal quotation marks, citations, and alterations omitted)).

In Vermont, "under the doctrine of res judicata, or 'claim preclusion, a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical.' The doctrine 'bars parties from relitigating, not only those claims and issues that were previously litigated, but also those that could have been litigated in a prior action.'" *Nat. Res. Bd. Land Use Panel v. Dorr*, 113 A.3d 400, 403 (Vt. 2015) (citations omitted) (quoting *Faulkner v. Caledonia Cty. Fair Ass'n*, 869 A.2d 103, 107 (Vt. 2004), and *Carlson v. Clark*, 970 A.2d 1269, 1273 (Vt. 2009)); *see also Russell v. Atkins*, 679 A.2d 333, 335 (Vt. 1996) (*res judicata* "bars not only issues actually litigated but also those which 'should have been raised in previous litigation'" (quoting *Berlin Convalescent Center, Inc. v. Stoneman*, 615 A.2d 141, 143–44 (Vt. 1992)).

As courts in Vermont cases have explained, the doctrine of *res judicata* serves to "protect the courts and the parties from the burden of relitigation," *Russell*, 679 A.2d at 335, and to protect the integrity and finality of the judgments issued, *Nat. Res. Bd.*, 113 A.3d at 403 ("Requiring the litigation of all claims that could or should have been raised between the parties precludes later rulings that might 'nullify the initial judgment or . . . impair rights established in the initial action.'" (quoting *Carlson*, 970 A.2d at 1274) (ellipses in *Nat Res. Bd.*)); *see also*

17

*Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 811 A.2d 655, 659 (Vt. 2002) ("[I]nvocation of res judicata . . . relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication." (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)) (internal quotation marks omitted) (alterations in *Pomfret*)).

Relevant here, Vermont *res judicata* doctrine has distinct features when the prior lawsuit was a foreclosure action. That is because such an action is distinct from a suit on an underlying note. The leading Vermont case on this subject is *LaFarr v. Scribner*, 549 A.2d 651 (Vt. 1988). In *LaFarr*, the defendants had given the plaintiff a second mortgage and a note secured by land and premises they held. *Id.* at 652. The plaintiff then brought a foreclosure proceeding and obtained from the court a judgment and decree of foreclosure on the mortgage. *Id.* The plaintiff did not request a deficiency judgment, nor was one granted by the court. *Id.* The plaintiff then filed a separate suit against the same defendants, "seeking the monies owed pursuant to the note underlying the foreclosed mortgage." *Id.* Defendants answered, asserting various affirmative defenses to the suit on the underlying note. *Id.* The plaintiff countered that defendants were barred by *res judicata* from offering the affirmative defenses due to their failure to raise them in (or to oppose) the earlier foreclosure action. *Id.*

The Vermont Supreme Court held that *res judicata* did not apply, because "foreclosure actions and deficiency actions are separate and distinct proceedings." *Id.* "It is axiomatic that a foreclosure action is an action in rem, while an action for a deficiency is an action in personam," the Court stated, and therefore "[n]either the mortgage nor the judgment impose any personal liability on defendants." *Id.* The Court explained: "The issues raised in a foreclosure action include the validity of the mortgage, the amount of indebtedness due on the mortgage, and the

right of the mortgagee to seek satisfaction of the indebtedness from the mortgaged property.  A judgment and decree of foreclosure will bar litigation of those issues in another action by virtue of the doctrine of res judicata." *Id.* at 653.

The Vermont Supreme Court also rejected plaintiff's claim that Vermont Rule of Civil Procedure 80.1(b), which governs complaints and service of process in a foreclosure action, required that the cause of action on the underlying note be brought in the same action.  *Id.* at 652 n.*.  Rather, it held, the only rule which "contemplates such merger" is Rule 80.1(j)(ii), which provides that, "in a foreclosure by judicial sale, the court is *empowered* to enter a deficiency judgment against the mortgagor if the plaintiff so requests in the complaint," *id.* (emphasis added); but that an initial action for strict foreclosure—in which possession of the mortgaged property is transferred to the mortgagee rather than sold at auction—does not preclude an ensuing action to collect the deficiency on the underlying debt, *id.* at 652 n.*, 653.

Thus, the Vermont Supreme Court concluded, "while the deficiency action was factually related to the previous foreclosure action, it differed from the nature and substance of that proceeding.  Therefore, the doctrine of res judicata does not bar defendants from raising their affirmative defenses" in the suit on the note itself.  *Id.* at 653.

The application of *LaFarr* in *Cowles v. Sunshine*, 2005 Vt. Super. LEXIS 26 (Vt. Super. Ct., Chittenden Cty. June 23, 2005) is similarly illuminating as to the limited *res judicata* effect of a foreclosure action.  The plaintiff there brought a foreclosure action on a mortgage the defendants had secured with real property, and a second action for a deficiency judgment.  *Id.* at *1.  A Vermont Superior Court issued a judgment and decree of foreclosure, establishing that the plaintiffs owed defendant $451,875.  *Id.*  The property was then sold for $396,000, leaving plaintiff, in the deficiency action, to seek the remaining $55,875.  *Id.*  Defendants then argued,

invoking *res judicata* and collateral estoppel, that the deficiency claims were barred because the plaintiff could or should have raised them in the foreclosure action.  *Id.*

The Superior Court rejected defendants' bid for preclusion.  As it explained, "press[ing] the [deficiency] claim at foreclosure . . . would have been somewhat of an epistemological conundrum for Plaintiff since it requires her to have made a specific claim for deficiency before a post foreclosure sale established such a deficiency."  *Id.* at *2.  Instead, the Court, citing *LaFarr*, emphasized the "essential separation between mortgage obligations and personal liability," and that "foreclosure sets the stage for a deficiency action," with "the res judicata effect of the prior foreclosure judgment [being] to set the amount that Defendants owe."  *Id.*

The Superior Court added that "[w]hile V.R.C.P. Rule 80.1(j) does allow for a deficiency judgment, it is only for a foreclosure by sale . . . [and] this was a strict foreclosure that did not have the accompanying procedures for a foreclosure by sale."  *Id.* at *4.  That was so even though the plaintiff included a claim for deficiency in the original pleading.  *Id.* at *3–4.  The Court therefore held that while the plaintiff was barred from bringing a later suit based on the *mortgage* (which had been foreclosed on), he "may bring an action on any accompanying promissory note or similar device that would make the Defendants liable."  *Id.*[11]

---

[11] In their briefs, both parties predominantly rely on federal cases from within the Second Circuit applying *res judicata* principles, although MFW also addressed the Vermont cases of *LaFarr* and *Cowles*.  *See* Def. Reply Br. 8–10; Pl. Surreply Br. 2–3, 5–6.  The federal cases appear consistent with the relevant principles articulated in the Vermont cases.  *See* Def. Reply Br. 9 (citing *U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 619 (S.D.N.Y. 2006) ("Under the well-settled doctrine of *res judicata*, a subsequent action is barred where: (1) the prior action concluded with a final adjudication on the merits; (2) the prior claims and the current claims involve the same parties or those in privity with them; and (3) the claims asserted in the present action were, or could have been, asserted in the prior action because they arise from a common nucleus of operative fact.")).  To be sure, Vermont law does not appear to use the "common nucleus of operative fact" formulation, under which a later suit is precluded if it arises out of "the transaction or series of transactions which was the subject of the prior suit," *see Computer Assoc. Inter., Inc. v. Altai, Inc.*, 126 F.3d 365, 368 (2d Cir. 1997), except in the

### 3.   Application

The Plausteiners argue that MFW's present action—for breach of contract on the AFA—is barred by *res judicata* based on the prior Vermont Action.  Specifically, they argue that two acts disposing of claims there have such preclusive effect:  (1) the dismissal with prejudice, pursuant to the Joint Stipulation, of the Supplemental Complaint; and (2) the resolution, by the Foreclosure Judgment Order and later Confirmation Order, of the Complaint of Foreclosure. The Court addresses these arguments in turn.

### a.   *The Supplemental Complaint and Joint Stipulation*

The Supplemental Complaint and Joint Stipulation come close, but ultimately fail to satisfy the requirements of *res judicata*, because there never was a judicial sale of the pledged collateral such that a deficiency claim could have actually been made.

As reviewed above, after PRIF had filed the Complaint of Foreclosure on the Mortgage on account of Snowdance's default on the Mortgage and the Forbearance Agreement, MFW, as successor to PRIF, entered into the AFA with Snowdance, the Plausteiners, Realty, Hotel, and Ski.  Under that agreement, the Plausteiners, Realty, Hotel, and Ski executed Pledge Agreements, whereby their equity and membership interests in Snowdance were pledged as security for the AFA.  *See* AFA § 8(a); Pledge Agreements.  When Snowdance later defaulted on the AFA, MFW filed the Supplemental Complaint, seeking to foreclose on the membership

---

context of determining whether a claim was a "compulsory counterclaim" in a prior action, and therefore barred from being asserted in a subsequent action, see *Pomfret Farms*, 811 A.2d at 658–59 (a compulsory counterclaim is a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" (quoting V.R.C.P. 13(a)).  But the Court has no occasion here to consider whether Vermont's limited use of that formulation is substantive as opposed to semantic.  The decisive issue here turns on the relationship between a specialized type of lawsuit (a foreclosure action on a mortgage) and a deficiency action.  As to that, Vermont case law is clear that the mere factual overlap between such actions does not mean that a follow-on deficiency action is precluded.  *LaFarr*, 549 A.2d at 653.

interests in Snowdance pledged by the Plausteiners, Realty, Ski, and Hotel.  Supp. Compl. ¶¶ 1, 21–22.

Rather than seeking a strict foreclosure of the pledged membership interests, MFW's Supplemental Complaint sought a judicial sale and a deficiency judgment.  *Id.* ¶¶ 27–32.  And, even though the parties agreed that MFW was entitled to a judicial sale of the pledged interests, MFW, for a time, sought a ruling to establish that, above and beyond the collateral pledged, Realty, Ski, and Hotel were jointly and severally liable for the entire debt identified in the AFA, and that MFW therefore could recover a deficiency judgment from them as well.  *See* Vt. SJ Decision at 1.  Significantly, however, Judge Cohen denied summary judgment on that issue, leaving it unresolved.  *Id.* at 4.  MFW, Snowdance, Realty, Ski, Hotel, and the Plausteiners then entered into the Joint Stipulation, which, in addition to setting out the parties' agreement regarding the sale of a chairlift, provided that the Supplemental Complaint "shall be dismissed with prejudice."  Joint Stipulation ¶ 3.

As the above account reflects, the filing of the Supplemental Complaint and the Joint Stipulation meet several requirements for *res judicata*.  First, the Joint Stipulation dismissing the Supplemental Complaint with prejudice constitutes an adjudication on the merits for *res judicata* purposes.  *See Russell*, 679 A.2d at 335 (settlement including dismissal with prejudice binds the parties as an adjudication on the merits) (citing *Littlefield v. Town of Colchester*, 552 A.2d 785, 786 (Vt. 1988)).  Second, the parties are identical, as MFW was the plaintiff, and the Plausteiners were defendants whose property (the membership interests) was being foreclosed on and against whom a deficiency claim was pled.  Third, the subject matter of the prior suit is the same as in this one, in that the cases involve the same transaction documents (the AFA and the Pledge Agreements executed pursuant thereto).

However, the final requirement of the *res judicata* test—that the cause of action is the same or substantially identical—is not satisfied.  That is because of the distinction, critical under Vermont law, between foreclosure actions and actions on the underlying note.[12]  To be sure, the Supplemental Complaint initially sought, as a complement to a foreclosure sale of the pledged collateral held by the Plausteiners, a judgment for any deficiency resulting from such a sale.  And had the sale occurred, MFW's claim for a deficiency judgment, raised in the same lawsuit, would have been ripe for, and capable of, resolution.

But, in the end, there was no foreclosure sale of the pledged membership interests.  And, with this precondition unmet, under Vermont law, a claim for deficiency judgment was never ripe for resolution.  *See* Pl. Sur-reply 5–6; Pl. 7/23/15 Ltr. at 1.  Rather, as *LaFarr* and *Cowles* demonstrate, until there is a foreclosure sale that "establish[s] such a deficiency," a deficiency claim simply does not and cannot exist.  *Cowles*, 2005 Vt. Super. LEXIS 26, at *2.  That MFW had sought such relief in its pleadings to cover the eventuality of a foreclosure sale did not make such relief available when the sale did not occur.  *Cowles* illustrates the point:  Even though the plaintiff had pled a claim for deficiency in the prior foreclosure action, the fact that the case proceeded through a strict foreclosure meant that there was no sale, and therefore, the previous foreclosure action could not bar a later suit on the underlying note.  *See id.* at *3–4.  So too, here. And although Judge Cohen stated in the Vermont Action that the parties had "agreed that plaintiff is entitled to a commercially reasonable sale of the collateral: the membership interests in Snowdance LLC that were owned by defendants Steven Plausteiner[ and] Susan Plausteiner,"

---

[12] MFW acknowledges that a claim for deficiency judgment and a claim seeking judgment for breach of the underlying note are "essentially the same," and does not oppose defendants' claim preclusion arguments based on that distinction.  Pl. 10/2/15 Ltr. at 2.

Vt. SJ Decision at 1, the Vermont Action's docket does not suggest (and the parties do not claim) that such a sale ever took place before the dismissal of the Supplemental Complaint.[13]

In so holding for MFW on this ground, the Court rejects other arguments MFW makes as to why the Joint Stipulation's dismissal of the Supplemental Complaint lacked preclusive effect. First, MFW argues that that Complaint was directed at wresting control of Snowdance from the Plausteiners (and the other Snowdance entities the Plausteiners owned), and not at recouping money damages. MFW Sur-reply Br. 3–4. But while gaining control of Snowdance may have been a motive for MFW in filing the Supplemental Complaint, that Complaint also sought relief in the form of a judicial sale of the membership interests and a deficiency judgment, as opposed to strict foreclosure.

MFW separately argues that the litigation of the Supplemental Complaint did not seek to establish the liability of the Plausteiners, Realty, Ski, and Hotel in their capacity as "Debtors" in the AFA. Rather, MFW notes, it pursued liability against the persons and entities that had executed Pledge Agreements as a "Guarantor." Pl. Sur-reply Br. 4–5; Pl. 7/23/15 Ltr.; *see* Supp. Compl. ¶¶ 19, 25, 28, 32. But this fact does not carry the day, because a deficiency judgment seeks to establish the liability of the owner of foreclosed collateral for the underlying debt, and the legal theory underlying that claim of liability is, for *res judicata* purposes, irrelevant. *See LaFarr*, 549 A.2d at 652–63 ("If the foreclosure of the mortgaged premises is insufficient to satisfy a debt secured by such mortgage, then the creditor's recourse is through *an action on the note*." (emphasis added)); *cf. Sand v. Bank of N.Y.*, 929 F.2d 916, 919 (2d Cir. 1991) (*res*

---

[13] MFW represents, in fact, that the membership interests were surrendered to MFW in July 2010 rather than sold at a foreclosure sale. MFW Sur-reply Br. 4. The Court does not rely on this representation, but notes if it did, this would reinforce the Court's holding, as such a transfer would more closely resemble a strict foreclosure than a judicial sale.

*judicata* does not depend on "the legal theory upon which a litigant relies" (citations omitted)). That MFW argued before the Vermont court that it sought "a declaration that *Debtors* are liable for any deficiency," defining "Debtors" as Snowdance and the Pledgors collectively, shows that the key issue underlying its deficiency claim was whether these entities were liable on the underlying debt, not the precise legal capacity (Debtor versus Guarantor versus Pledgor) under which they were so liable.  *See* MFW SJ Br. 1–3, 7 (emphasis added).

MFW next argues that it never sought a deficiency judgment against the Plausteiners, but rather only against Realty, Ski, and Hotel, and therefore *res judicata* cannot bar its present action against the Plausteiners.  Pl. 10/2/15 Letter, at 2.  That argument fails for two reasons.  First, MFW's footnotes in its summary judgment brief stated that it was not seeking deficiency judgments against the Plausteiners "personally at this time."  MFW SJ Br. 2 n.1, 7 n.6.  Although these footnotes are less than crystal clear, a reasonable reading of them is that MFW was not seeking *summary judgment* against the Plausteiners personally, as opposed to not pursuing that claim *at all* in the litigation.  There would have been good reason for that strategic decision, as establishing the Plausteiners' liability on the entire debt raised unique complications—namely, the provision of the AFA releasing the Guarantors, the Plausteiners, from their obligations under the Transaction Documents.  *See* Vt. SJ Decision at 3 n.1 (noting that the release further complicated the interpretation of the agreements).  Second, and more important, even if MFW had unambiguously expressed its intention not to seek a deficiency judgment in the Vermont Action against the Plausteiners as part of the foreclosure on the pledged membership interests, MFW still *could* have brought such a claim alongside its deficiency claims against Realty, Ski, and Hotel.  *Res judicata* bars claims that "could have been litigated in a prior action."  *Nat. Res. Bd.*, 113 A.3d at 403 (quoting *Carlson*, 970 A.2d at 1273).  Therefore, had MFW foreclosed on

all of the pledged membership interests, conducted a foreclosure sale, and then sought only a deficiency judgment against Realty, Ski, and Hotel, its claims against the Plausteiners here would be precluded.

MFW next notes that the Vermont Superior Court itself did not view the Joint Stipulation as resolving the issue of whether the Pledgors / Guarantors, specifically Realty, Ski, and Hotel, were jointly and severally liable for the underlying debt. Pl. 10/2/15 Ltr. at 2.  On August 3, 2012, the Vermont court issued a Decision on Pending Motions.  While the thrust of the decision was to resolve disputes over the parties' respective control and interest in the remaining Ascutney assets, at the end of its decision, the Vermont court set out the issues it identified as outstanding, which included "whether the pledge agreements given by the three Snowdance companies are recourse or non-recourse (the issue identified by the first summary-judgment decision)."  Pending Motions Decision at 12.  MFW argues that, had the court construed the Joint Stipulation as having left open (*i.e.*, having left unresolved) that issue, then the claim for joint and several liability against the three Snowdance companies or the Plausteriners cannot be barred by *res judicata*.  Pl. 10/2/15 Ltr. at 2–3.  And, MFW argues, had the Plausteiners intended the Joint Stipulation to preclude further adjudication of any claims for monetary damages against the Pledgors / Guarantors of the membership interests, it would have objected to the Court's description of that issue as outstanding, whereas the Vermont docket reflects no such objection. *Id.*  This argument, however, is problematic as an independent basis for denying *res judicata*, because there is no indication that issue remained pending before the Vermont Court following the dismissal of the Supplemental Complaint.  The filings in the Vermont docket supply no basis on which to view that issue as open, as opposed to having been dropped, with no merits finding having been made, upon execution of the Joint Stipulation.

Finally, MFW argues that the Joint Stipulation may have become void later, when the Plausteiners violated its other terms by acting to block the sale of and to further encumber the chairlift.  *Id.* at 3; *see also* MFW Partial Distribution Opposition at 2–4.  The Vermont Court, however, never found such a violation, and instead ruled in MFW's favor on other grounds, Pl. 10/2/15 Letter at 3, and it ruled that "the terms of the joint stipulation regarding priority never became binding" because the terms of the stipulation were keyed toward the sale of the chairlift to a specific buyer, which never occurred, Vt. SJ Chairlift Decision at 2.  Responding to this claim, the Plausteiners dispute that the Joint Stipulation ever became void, arguing that MFW, in the Vermont Action, sought to enforce the Joint Stipulation according to its terms.  Def. 10/2/15 Ltr. at 2–3.  The Court cannot hold here, on a motion to dismiss, that the Joint Stipulation ever became void, or did not, particularly as no court in Vermont ever so held.  Because, as explained above, the Joint Stipulation would not preclude the present action even if it remained effective, the Court has no occasion now to resolve whether the Joint Stipulation became void by subsequent events.

The Court therefore holds that the Joint Stipulation dismissing the Supplemental Complaint with prejudice does not bar, under *res judicata*, MFW's present suit for damages under the AFA.

### b.   *Foreclosure Judgment Order and Confirmation Order*

The Plausteiners next argue that the ultimate resolution of the Vermont Action—that is, the Foreclosure Judgment Order and the ensuing Confirmation Order—preclude the present action because these represented a final adjudication on the merits of the Vermont Action, and because MFW, attendant to the foreclosure sale of the mortgaged property, expressly "waive[d] any deficiency claim."  Def. 10/2/15 Ltr. at 1, 3–5.  The Plausteiners argue that the word "any" should be read to mean "all" deficiency claims against all defendants in the foreclosure action,

27

including them.  Def. 10/7/15 Ltr. at 2.  MFW counters that the Foreclosure Judgment Order imposed money damages only on Snowdance, and that the waiver of deficiency claims similarly applied only to Snowdance.  Pl. 10/5/15 Ltr.  Further, MFW explains, the Plausteiners were defendants in the foreclosure action only in a limited capacity, to foreclose any claim they may have in the foreclosed property.  *Id.*

MFW's arguments on this point are persuasive.  The orders in question do not bar MFW's present action for personal liability against the Plausteiners under the AFA because the foreclosure judgment and sale arose out of a foreclosure action with respect to property owned by mortgagor Snowdance, not the Plausteiners.  The waiver of "any deficiency" in the Confirmation Order must be understood in the context of a suit for that limited purpose.  The Complaint of Foreclosure had been brought against Snowdance to foreclose on the Mortgage that secured the PRIF Loan and attendant promissory note; the Mortgage had been entered into exclusively between PRIF, as mortgagee, and Snowdance as mortgagor, *see* Mortgage at 1; and the promissory note underlying the PRIF Loan had similarly been entered into between PRIF as "Lender" and Snowdance as "Borrower," *see* Note at 1.  The foreclosure action was brought against the mortgaged property owned by Snowdance on account of its default on the terms of the Mortgage and underlying note.  Any deficiency claim thus was against Snowdance only.  *See LaFarr*, 569 A.2d at 652 n.* (under V.R.C.P. 80.1(j)(ii), "in a foreclosure by judicial sale, the court is empowered to enter a deficiency judgment against the *mortgagor* if the plaintiff so requests" (emphasis added)).  Consistent with this, the Confirmation Order provides that the Foreclosure Judgment Order and ensuing sale would resolve the "foreclosure action . . . filed by Complaint dated March 11, 2008 by [MFW's] predecessor [in] interest to [sic] PRIF."

As the Complaint of Foreclosure and the ensuing Amended Complaints of Foreclosure reveal, the other defendants were sued not as mortgagors or because of their potential liability on the underlying promissory note.  Rather, as V.R.C.P. 80.1(b)(1) required, they were included as "parties in interest"—or, as MFW cast them, "foreclosure defendants," Pl. 10/5/15 Ltr.— because they had potential interests in or liens on the mortgaged property.  *See, e.g.*, Complaint of Foreclosure ¶¶ 17–18 (recounting that because Textron—later Realty as Textron's successor in interest—"may have or claim some interest or lien in or upon the Real Property, junior or inferior to that of Plaintiff, [it] is hereby joined in this action as a defendant pursuant to Rule 80.1(b)(1)"); Dkt. 51–10 ¶¶ 19–24 (Amended Complaint of Foreclosure dated June 6, 2011) (making similar allegations against other defendants).

The Foreclosure Judgment Order and Confirmation Order reinforce that the Plausteiners were defendants in the foreclosure action for this sole reason.  The Foreclosure Judgment Order stated that unless the Plausteiners, or other defendants in interest, paid the full judgment owed by the date of redemption, they "shall be foreclosed of and from all title, right, interest and demand of and in the Mortgaged Property . . . and said defendant shall be foreclosed and forever barred from all equity of redemption in the Mortgaged Property."  Foreclosure Judgment Order at 2–5.  With no defendant having paid the outstanding judgment, the foreclosure sale proceeded, foreclosing the interests of the defendants in the subject lands.  Confirmation Order at 2.  Notably, too, the parties that jointly stipulated to the amount of the debt owed were MFW and Snowdance, not the Plausteiners, and these amounts, upon approval by the Court, formed the basis of the judgment of foreclosure.  Foreclosure Judgment Order at 1.

In this context, the requirements of *res judicata* are not met—because the causes of action are not identical, or substantially so, as to the relevant parties.  While unlike *LaFarr*, the

Vermont Action was not a strict foreclosure but instead a foreclosure by judicial sale such that a deficiency claim could have been brought, the only applicable deficiency would have been owed by Snowdance, the mortgagor of the property and the borrower on the underlying note.  *See LaFarr*, 549 A.2d at 652–53 (a deficiency action is a "personal action" against the defendant for liability based on an underlying note); *cf. Costello v. Enright (In re Costello)*, No. 04–1016, 2004 WL 2480995, at *3 (D. Vt. Bankr. Nov. 1, 2004) (because prior-case plaintiff sued both on the underlying note *and* to foreclose on the mortgage, the prior-case defendants were subject to personal liability, and *res judicata* barred them from later asserting claims that had been compulsory counterclaims).  Read in the context of the foreclosure sale, the provision that "Plaintiff [MFW] waives any deficiency claim" does not connote that MFW was thereby foregoing its rights to seek to collect on the difference between what was recovered in the foreclosure sale and the total amount due on the underlying debt, such as through the present contract action, against a different party (the Plausteiners), for breach of a different agreement (the AFA).

Accordingly, the Court holds that the Vermont foreclosure action, as resolved in the Foreclosure Judgment Order and the Confirmation Order, does not preclude MFW from seeking to establish the Plausteiners' personal liability under the AFA for the underlying debt.  It follows, too, that that action does not preclude MFW from seeking reasonable attorneys' fees incurred in enforcing the Transaction Documents.

For avoidance of doubt, this ruling here does not mean that the foreclosure action cannot have some *res judicata* effect, but only that such effect does not extend to barring the present case at the threshold.  As *LaFarr* explained:  "The issues raised in a foreclosure action include the validity of the mortgage, the amount of indebtedness due on the mortgage, and the right of

30

the mortgagee to seek satisfaction of the indebtedness from the mortgaged property.  A judgment and decree of foreclosure will bar litigation of those issues in another action by virtue of the doctrine of res judicata."  549 A.2d at 653.  Conceivably, MFW or the Plausteiners may rightly invoke preclusion principles as to discrete issues that may arise here.  For example, the values stipulated to and ordered in the Foreclosure Judgment Order may control as to components of any judgment that MFW may win here.  The Court has no occasion to resolve such questions now.

### B.      Failure to State a Claim

The Plausteiners next seek dismissal under Rule 12(b)(6), arguing that the AFA expressly releases them of all obligations.  MFW responds that while that agreement relieves the Plausteiners from their duties as "Guarantors," it leaves them liable for the obligations under it as "Debtors," which is the basis for MFW's present claim.  The Court finds MFW's interpretation more persuasive, and holds that the release is insufficient to support dismissal at this stage.

### 1.      Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v.*

*5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[R]ather, the complaint's *factual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks, citation, and alteration omitted) (emphasis in *Arista Records*).

### 2.    Application

MFW has stated a prima facie claim for breach of contract. Under New York law,[14] a breach of contract claim need allege only: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). MFW's Complaint pleads these elements. It pleads that MFW and the Plausteiners were parties to a contract, namely the AFA, Compl. ¶¶ 15–16, 25, that MFW "substantially performed all of its obligations" pursuant to that agreement, *id.* ¶ 26, that the Plausteiners breached their obligations as "Debtor" under that agreement by failing to pay the amounts owed according to its terms, *id.* ¶¶ 17–19, 27, and that it was damaged monetarily as a result of the Plausteiners' failure to pay the debt, *id.* ¶ 28. The

---

[14] The AFA contains a choice of law provision (§ 18), which states that it "shall be governed by and construed in accordance with the laws of New York, and/or Vermont, the choice of which is subject to [MFW's] sole and absolute discretion." MFW cites exclusively to New York contract law in opposing the motion to dismiss. *See* Pl. Br. 4–7. Where "[t]he parties' briefs assume that New York law controls . . . such 'implied consent . . . is sufficient to establish choice of law.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran-Berkeley Civil & Envtl. Engineers v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).

Plausteiners counter that the AFA expressly released them from all personal liability on the debt, such that they had no remaining obligations and cannot be in breach.  Def. Br. 6–7.

In general, "[d]ismissal of a breach of contract claim is appropriate where a contract's clear, unambiguous language excludes a plaintiff's claim."  *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.*, No. 11 Civ. 4509 (RJS), 2013 WL 1385210, *2 (S.D.N.Y. Mar. 18, 2013) (citing *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 Fed. App'x 48, 49 (2d Cir. 2008) (summary order)); *see also Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003) ("Judgment as a matter of law is appropriate if the contract language is unambiguous." (alterations, internal quotation marks, and citation omitted)).  A contract is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion."  *Photopaint Techs.*, 335 F.3d at 160 (internal quotation marks, alterations, and citation omitted).  "Whether or not a writing is ambiguous is a question of law to be resolved by the courts."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) (internal quotation marks and citation omitted).

In arguing that they have been released from all obligations, the Plausteiners rely on § 8(e) of the AFA.  It provides:

> [MFW] hereby releases Guarantors, Steven and Susan Plausteiner, from their obligations under the Transaction Documents and from any guaranty relating in any way to the Transaction Documents, including but not limited to, (i) the Guaranty dated May 19, 2005 given by the Guarantors in favor of PRIF and (ii) the Limited Guaranty dated May 19, 2005 given by the Guarantors in favor of PRIF (together the 'Guarantees').  The Guarantees are hereby terminated and of no further force or effect. . . .  This release shall only apply to Guarantors.

As the Plausteiners note, the AFA provides that it "shall be deemed incorporated into and made part of the Transaction Documents." *Id.* ¶ 1 and § 10.  They further note that § 8(e) provides that the release "includes but [is] *not limited to*" the enumerated guarantees specified in that section. *Id.* § 8(e) (emphasis added).

That release, however, by no means clearly releases the Plausteiners from their obligations in all of their capacities under the AFA.  Rather, as MFW argues, there is, at a minimum, a substantial argument on the face of the agreement that it releases the Plausteiners solely in their capacity as Guarantors.  As noted, the agreement describes itself as "by and between" multiple individuals and entities, and lists the Plausteiners in multiple capacities: as "Guarantors," as "Pledgors," and, collectively with the Borrower (Snowdance) and other Pledgors (Ski, Realty, and Hotel), as the "Debtor."  *Id.* at 1.  However, the § 8(e) release, by its terms, applies to "*Guarantors*, Steven and Susan Plausteiner," and states that it "shall *only* apply to Guarantors."  *Id.* § 8(e) (emphasis added).

In pursuing dismissal, the Plausteiners do not grapple with the release's limitation to "Guarantors."  They claim instead that because the Plausteiners are the Guarantors, it must be that they were released of their obligations in all other capacities.  But this *ipse dixit* does not follow.  On the contrary, the Plausteiners' theory that § 8(e) is a global release is in tension both with interpretive canons and other provisions of the AFA.

It is, first, in tension with the canon *expressio unius est exclusion alterius*, meaning that "the expression of one thing implies the exclusion of the other."  *See Croteau v. A.C. (In re N.Y.C. Asbestos Litig.)*, 838 N.Y.S.2d 76, 80 (1st Dep't 2007); *see also Quadrant Structured Products Co. v. Vertin*, 23 N.Y.3d 549, 560 (2014) (noting the use of the canon for contract interpretation).  Under that canon, the limitation of the release expressly to the Guarantors carries

a negative implication that it does *not* apply to the other parties to the agreement, including the Plausteiners in their capacities as Pledgors and as part of the collective "Debtor." Second, the Plausteiners' interpretation appears at odds with other provisions of the AFA which imposed obligations on them in non-Guarantor capacities. For example, § 8(a) provides that "Debtors shall executed [sic] and deliver to [MFW] Limited Liability Membership Pledge Agreements from Steven Plausteiner, Susan Plausteiner, [Ski], [Hotel] and [Realty] pledging all of the limited liability common membership interests owned by each person or entity in Snowdance LLC." This evidently contemplates continuing obligations by the Plausteiners in their Debtor capacity. Similarly, the AFA, which defines "Debtor" to include the Plausteiners, provides that "[t]he *Debtor* acknowledges and confirms that *they* are indebted to [MFW]," AFA § 2, and that "Debtor shall pay to [MFW]" the amounts specified in the agreement, *id.* § 5. The Plausteiners' interpretation would appear to vitiate these clauses, in conflict with the principle that "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible. . . . Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *Bank of N.Y. Trust, N.A. v. Franklin Advisers, Inc.*, 674 F. Supp. 2d 458, 463 (S.D.N.Y. 2009) (ellipses in original) (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)) (internal quotation marks and alteration omitted) , *aff'd sub nom. Bank of N.Y. Trust Co. v. Franklin Advisers, Inc.*, 726 F.3d 269 (2d Cir. 2013).

To be sure, the purpose of releasing the Plausteiners only in one limited capacity is elusive. Judge Cohen observed in his summary judgment decision:

> [I]t does not make sense to release the personal guarantees if [MFW's] interpretation of the contract—that each pledger [or each individual and entity comprising the Debtor] is jointly and severally liable for the entire amount of the loan—is correct. The release of the guaranty would be an empty gesture under that

interpretation, for the Plausteiners would still remain severally liable for the entire amount of the loan in their individual capacities.

Vt. SJ Decision, at 3 n.1. However, the Court need not explore that question on the Plausteiners' present motion. The text of the AFA clearly favors MFW's argument that the release applies to the Plausteiners only in their capacity as guarantors. At most, the Plausteiners' critique of the purpose served by such a limited release might be claimed to create a degree of ambiguity as to its scope, potentially justifying discovery into the issue. On no reading can § 8(e) be held, at the pleading stage, to release the Plausteiners globally. Therefore, the Plausteiners' bid for dismissal on the basis of the release must be denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied. The parties are directed to jointly submit a proposed case management plan and scheduling order by April 1, 2016. The Clerk of Court is directed to close the motion pending at docket 19.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 24, 2016
       New York, New York